# EXHIBIT 3

GSK has provided an update to its 340B policy

ABOUT US FAQS CONTACT RESOURCES FORMS SIGNUP

Last updated October 4, 2024

# 340B ESP™ COVERED ENTITY PORTAL TERMS OF USE

IN THIS DOCUMENT

Data Collected By the Covered Entity Platform

Rights We Grant to You

Rights You Grant to Us

Use of the

Welcome to 340B ESP™, provided by Second Sight Solutions LLC and its affiliates ("Second Sight," "Company," "we," "us," "our"). These legally binding Terms of Use, as may be amended by us from time to time ("Terms"), apply to the 340B ESP™ Covered Entity website portal accessed at www.340besp.com/register and www.340besp.com/login (our "Covered Entity Portal"), and associated web pages and the 340B ESP™ offering made available therein (together with any updates provided by Second Sight and any corresponding documentation, associated media, printed materials, and online or electronic documentation) (collectively, the "Covered Entity Platform").

340B ESP™ enables a 340B covered entity to submit certain de-identified 340B pharmacy claims data to Second Sight. Second Sight then enables analysis of this data for pharmaceutical manufacturers in order to identify duplicate Medicaid, Medicare,

Covered Entity Platform

Ownership of the Covered Entity Platform and Feedback

Warranty and Limitation of Liability

Indemnification

Delivery of Services

Term and Termination

Forum Selection and Choice of Law

General Provisions

TriCare and commercial payer rebates that are not eligible for reimbursement by Participating Pharmaceutical Manufacturers (defined below) ("Ineligible Rebates"). For additional information about the Covered Entity Platform, please see our Frequency Asked Questions ("FAQs"), available online at www.340besp.com/faqs.

Please read and review these Terms carefully before accessing or using the Covered Entity Platform. In order to use the Covered Entity Platform, you must register for an account using an e-mail address associated with a 340B covered entity by whom you are employed or acting as an agent ("Covered Entity") and on whose behalf you will be submitting de-identified 340B pharmacy claims data ("Covered Entity Claims Data"), or you must register using an invitation received from an Administrator Account (defined below) associated with the Covered Entity. Our 340B ESP™ Privacy Policy, available online at www.340besp.com/privacy or such other location as we may make available ("Privacy Policy"), and incorporated herein by reference, explains how we collect and use the Covered Entity Claims Data and User Information (defined below).

These Terms are a legally binding agreement between Second Sight, the Covered Entity and its affiliates, your employer or principal if you are employed or acting as an agent for a legal entity other than the Covered Entity and such entity's affiliates, and you ("Agreement"). The terms "you" and "your" shall refer to the Covered Entity and its affiliates, your employer if a legal entity other than the Covered Entity, and you.

BY USING THE COVERED ENTITY PLATFORM, CLICKING THE "ACCEPT" BUTTON, OR OTHERWISE AFFIRMING ACCEPTANCE YOU (A) ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THESE TERMS AND OUR PRIVACY POLICY; (B) REPRESENT THAT YOU HAVE THE AUTHORITY TO ENTER INTO THE AGREEMENT ON BEHALF OF THE COVERED

ENTITY BY WHOM YOU ARE EMPLOYED OR ACTING AS AN AGENT TO PROVIDE COVERED ENTITY CLAIMS DATA, OR ON BEHALF OF YOUR EMPLOYER OR PRINCIPAL IF A LEGAL ENTITY OTHER THAN THE COVERED ENTITY, AND THAT ENTRY INTO THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY THE COVERED ENTITY AND YOUR EMPLOYER; AND (C) YOU ACCEPT THIS AGREEMENT AND AGREE THAT YOU, THE COVERED ENTITY, AND YOUR EMPLOYER OR PRINCIPAL ARE LEGALLY BOUND BY ITS TERMS. IF YOU DO NOT AGREE TO THESE TERMS OR DO NOT HAVE SUCH AUTHORITY, DO NOT USE THE COVERED ENTITY PLATFORM. PLEASE NOTE SECTION 6.2 CONTAINS INFORMATION ABOUT A DISCLAIMER; 6.3 CONTAINS INFORMATION ABOUT LIABILITY LIMITS, SECTION 10 INCLUDES A FORUM SELECTION AND CHOICE OF LAW; AND SECTION 11.6 CONTAINS INFORMATION ABOUT HOW THESE TERMS CAN BE AMENDED.

1. **Data Collected By the Covered Entity Platform**

   1.1 **Covered Entity Claims Data.** The Covered Entity Platform enables you, on behalf of the Covered Entity, to use your computer under your control to (a) de-identify 340B pharmacy claims data into Covered Entity Claims Data that is fully de-identified as defined under the Health Insurance Portability and Accountability Act of 1996, as amended, and its implementing regulations ("HIPAA"); and (b) subsequently upload the Covered Entity Claims Data to Second Sight's servers for further processing. When you load 340B pharmacy claims data for prescriptions processed by the Covered Entity into your internet browser, the Covered Entity Platform software running locally within your internet browser ("Covered Entity Platform Browser Software") first processes the data locally within your internet browser to enable the

extraction and the generation of the data fields listed below, as specified by the National Council for Prescription Drug Program's ("NCPDP") Field Numbers, and in accordance with the "Manufacturer Rebate Utilization, Plan, Formulary, Market Basket, and Reconciliation Flat File Standard" associated with such Field Numbers (when applicable), and Participating Pharmaceutical Manufacturers' policies. When you load 340B pharmacy claims data into your internet browser for de-identification and subsequent upload, you will not be uploading any other data elements that are included in your data file because the Covered Entity Platform Browser Software excludes and does not collect such data elements. For additional information regarding which data points and/or data elements you may upload to the Covered Entity Platform, please see our Frequently Asked Questions ("FAQs"), available online at www.340besp.com/faqs.

1.2 **De-Identification Method.** The Covered Entity Claims Data is fully de-identified in accordance with the HIPAA expert determination method pursuant to 45 C.F.R. §164.514(b)(1) and does not contain any "Protected Health Information" or "PHI" as defined under HIPAA. The Covered Entity Platform Browser Software applies a SHA-3 hashing process with salting to each of the Prescription Number, Prescribed Date and Fill Date, where no party will have direct access to the salt key. You or a Covered Entity's Account holders may use the Covered Entity Platform Browser Software to upload the resultant de-identified data set as the Covered Entity Claims Data to Second Sight's servers for further processing. The Covered Entity Platform's processes adhere to the de-identification

methodologies described in the expert determination. For additional information, please see the FAQs or request more information about the HIPAA expert determination by contacting us at support@340besp.com.

1.3 **Re-Identification.** Second Sight shall not attempt to re-identify or de-anonymize any of the Covered Entity Claims Data, including, without limitation, attempting to correlate any such data with any number, identifier, characteristic or other information that could be used, alone or in combination with other information, to identify any individual patient.

1.4 **Data Accuracy.** You represent and warrant that the 340B pharmacy claims data that you load into Covered Entity Platform Browser Software and the Covered Entity Claims Data that you submit through the Covered Entity Portal will be complete and accurate, and follow the format and instructions provided within the Covered Entity Portal, as noted in Sections 3.2, 4.2.4 and 4.4. If any data is provided in an incorrect format (e.g., a misidentification of a field) the de-identification process may not work as intended. If you inadvertently submit any PHI to the Covered Entity Platform, Second Sight shall upon discovery of such error delete the PHI from the Covered Entity Platform and notify you accordingly. Second Sight assumes no responsibility or liability for any errors in the data received from you, to the extent arising from errors in your records or from incorrect use of the Covered Entity Platform.

1.5 You agree to grant us rights to use the Covered Entity Claims Data discussed in further detail below in Section 3.1.

2. **Rights We Grant to You.**

2.1 Subject to and conditioned upon your compliance with these Terms, Second Sight hereby grants a revocable, non-sublicensable, non-transferable, non-assignable, non-exclusive, limited right and license, to access and use the Covered Entity Platform for the Term of this Agreement ("Covered Entity Platform License"). This Covered Entity Platform License transfers to you neither title nor any proprietary or intellectual property rights to the Covered Entity Platform, related documentation, or any copyrights, patents, or trademarks, embodied therein or used in connection therewith, except for the rights expressly granted herein. Second Sight may terminate this Covered Entity Platform License at any time for any reason. All rights not expressly granted hereunder are reserved by Second Sight.

2.2 Except as otherwise provided below, you agree that you will not yourself, or through any parent, subsidiary, affiliate, agent or other third party: (i) sell, lease, license or sublicense the Covered Entity Platform or any documentation, information, data or anything else accessible through the Covered Entity Platform; (ii) decompile, disassemble, or reverse engineer the Covered Entity Platform, in whole or in part; (iii) write or develop any derivative work based upon the Covered Entity Platform or any documentation, information, data, confidential information, or anything else accessible through the Covered Entity Platform; (iv) use the Covered Entity Platform in violation of any federal, state, or local law, regulation or rule ("Applicable Laws"); (v) use the Covered Entity Platform for purposes of competitive analysis of the Covered Entity Platform, the

development of competing software products or services or any other purpose that is to the commercial disadvantage of Second Sight; (vi) provide, disclose, divulge or make available to, or permit access or use of the Covered Entity Platform, by any third party; (vii) retrieve, index, scrape, harvest, data mine or otherwise systematically gather or store content of the Covered Entity Platform; or (viii) remove any copyright, trademark or other proprietary notice or legend contained on (or printed from) the Covered Entity Platform.

2.3 You acknowledge that Second Sight provides services to entities whose businesses may be competitive with yours. Nothing in this Covered Entity Platform License shall restrict Second Sight's ability to license the access and use of the Covered Entity Platform or provide any other services to any third parties, regardless of any potential conflict between such third parties and you.

3. **Rights You Grant to Us.**

3.1 **Data License.** You represent and warrant that you have any and all necessary right, title, license and authority (including any and all necessary permissions from third-party owners and rights holders) to provide the Covered Entity Claims Data to the Covered Entity Platform. You grant Second Sight a worldwide, sublicensable, non-exclusive, royalty-free, perpetual, irrevocable license to collect, process, disclose, create derivative works of and otherwise use the Covered Entity Claims Data (“Data License”) for the purposes set forth herein, including specifically pursuant to Sections 3.4 and 3.5, and represent and warrant that you are authorized to grant such Data License on behalf of the Covered Entity. This Data License

survives after termination of the Agreement and shall survive as to any Covered Entity Claims Data that you have submitted on behalf of the Covered Entity or that a TPA (as defined herein) has submitted on behalf of the Covered Entity after such respective dates of submission. You further represent and warrant that you are under no obligation to any third party that would prohibit or interfere with entering into these Terms, providing such Covered Entity Claims Data, granting the Data License or otherwise performing under these Terms, and that entering into these Terms and the arrangements set forth in these Terms (including without limitation providing such data and granting the Data License) and performance hereunder will neither conflict with, result in, nor constitute a breach under any other agreement or arrangement to which you are a party.

3.2 You assume responsibility for ensuring that data is entered correctly into the Covered Entity Platform Browser Software to ensure correct submission of Covered Entity Claims Data. You agree to follow all instructions provided within the Covered Entity Platform to provide 340B pharmacy claims data on behalf of the Covered Entity in the specified format to facilitate de-identification thereof and submission of Covered Entity Claims Data.

3.3 You agree that Second Sight may use the Covered Entity Platform Browser Software to collect Covered Entity Claims Data for pharmaceutical manufacturers identified within the Covered Entity Platform (“Participating Pharmaceutical Manufacturers”). You agree that if the Covered Entity has authorized and consented to

having one or more third party administrators submit Covered Entity Claims Data associated with such Covered Entity to Second Sight on its behalf (each, a "TPA"), Second Sight may reach out to such TPAs to collect such Covered Entity Claims Data from the TPAs. You may, on behalf of a Covered Entity, withdraw the authorization and consent for a TPA to provide Covered Entity Claims Data to Second Sight, with ten (10) business days advance written notice provided to Second Sight at the Notices contact provided below, and to the TPA.

3.4 You agree that Second Sight may enable Covered Entity Claims Data to be combined with rebate data remitted to Participating Pharmaceutical Manufacturers by payers (including Medicaid, Medicare, TRICARE and commercial payers) ("Rebate Data") in order to identify Ineligible Rebates and evaluate compliance with Participating Pharmaceutical Manufacturers' policies. You agree that Second Sight may enable reporting of the Ineligible Rebates, together with any other Covered Entity Platform Data (as defined below), to Participating Pharmaceutical Manufacturers, commercial payers, rebate claims processors or state Medicaid agencies. You acknowledge and agree that Participating Pharmaceutical Manufacturers, commercial payers, rebate claims processors or state Medicaid agencies may link the Covered Entity Claims Data with identifiable complete rebate data possessed by such entities.

3.5 You agree that Second Sight may disclose and sub-license the Covered Entity Claims Data and any other data derived from the interpretation, analysis, and

combination of the foregoing data with other data (the "Covered Entity Platform Data") to the Participating Pharmaceutical Manufacturers, commercial payers, rebate claims processors or state Medicaid agencies under the same Terms as applicable to us for the purpose of identifying Ineligible Rebates and evaluating compliance with Participating Pharmaceutical Manufacturer policies. Covered Entity Claims Data will only be disclosed or sub-licensed to the specific Participating Pharmaceutical Manufacturer that owns or markets the specific product included on the claim, and only for the purposes set forth herein, including specifically pursuant to Sections 3.4 and 3.5. Further, you agree that Second Sight may use the Covered Entity Platform Data for purposes of identifying Ineligible Rebates, improving the Covered Entity Platform and improving the process for identifying Ineligible Rebates.

4. **Use of the Covered Entity Platform.** Your access and use of the Covered Entity Platform shall be solely for your use on behalf of the Covered Entity. Upon registration, you will be assigned a User ID and you shall select a password to access and use the Covered Entity Platform ("Account").

4.1 **User Accounts.** In order to register for an Account, you must either (a) use an email address having a domain name associated with the Covered Entity to register for an Account that can invite other users to register on behalf the Covered Entity ("Administrator Account"), or (b) register using an invitation from the Administrator Account of the Covered Entity. As part of the registration process you must provide your first name, last name, work e-mail address, and the

Covered Entity on whose behalf you are accessing the Covered Entity Platform ("User Information"). You may provide your cell phone number as part of the registration process and User Information for authentication purposes. Your registration may be subject to our verification and further requests for information and may be denied for any reason or no reason.

4.1.1 You consent to Second Sight contacting you via your work e-mail or if applicable via your cell phone number (by call or text) or other User Information in order to authenticate your identity, provide notifications regarding the Covered Entity Platform, and improve the services.

4.1.2 You consent to Second Sight sharing your User Information with participating pharmaceutical manufacturers. You consent to said participating pharmaceutical manufacturers contacting you via your User Information regarding the use of our Covered Entity Platform.

4.1.3 If you register using a work e-mail having a domain name associated with the Covered Entity, you represent and warrant that you are an employee or agent of the Covered Entity. If you register via an invitation by the Administrator Account using a work e-mail having a domain name different than the Covered Entity, you represent and warrant that you are an employee or agent of the Covered Entity, or an employee or agent of a legal entity that has been contracted and authorized by

the Covered Entity to provide Covered Entity Claims Data to the Covered Entity Platform on its behalf.

4.2 **Conditions of Use.** You agree to comply with these Terms as well as all Applicable Laws related to or in connection with the Covered Entity Platform, its use, and data provided to or displayed by the Covered Entity Platform.

4.2.1 You (i) shall not provide access to your User ID or password to any third party; (ii) shall promptly notify Second Sight of any unauthorized use of your User ID or password; and (iii) shall ensure that you exit from your Covered Entity Platform account at the end of each session.

4.2.2 You shall comply with the restrictions set forth in Section 2.2 above.

4.2.3 You agree, without limiting Second Sight's other rights and remedies, that you are responsible and liable for your access to, and use of, the Covered Entity Platform, including any negligent acts or omissions or your breach of any of these Terms.

4.2.4 You agree to timely submit Covered Entity Claims Data through the Covered Entity Platform in the intervals specified therein, and to correct any errors in submission within the time period identified below in Section 4.4 Monitoring.

4.2.5 If you are the registrant or account holder of an Administrator Account, you represent, warrant and agree that you shall invite only

individuals to the Covered Entity Platform that are employed by or authorized to act as an agent of the Covered Entity associated with the Administrator Account for the purposes of this Agreement.

4.3 **Account Access and Termination.** Second Sight reserves the right to deny access to any user, or terminate the use of any User ID and password, at any time in the event Second Sight determines in its sole discretion that unauthorized or otherwise inappropriate use of the Covered Entity Platform by a user has occurred or may occur, including but not limited to conduct in breach of these Terms or in violation of Applicable Laws.

4.4 **Monitoring.** You acknowledge and grant us the right to (i) monitor your use of the Covered Entity Platform, (ii) monitor compliance with this Agreement, (iii) investigate any complaint or reported violation of our policies; or (iv) report any activity that we suspect may violate any law or regulation to regulators, law enforcement officials or other persons or entities that we deem appropriate. If any such monitoring reveals that you are not using the Covered Entity Platform in compliance with this Agreement, then you will remedy any such non-compliance within five (5) business days of receiving notice from us.

4.5 **Security and Confidentiality.** Second Sight agrees to use appropriate administrative, physical, and technical safeguards to keep Covered Entity Claims Data secure and to prevent the use or disclosure of Covered Entity Claims Data other than as provided by this Agreement. For additional information, please see the FAQs.

5. **Ownership of the Covered Entity Platform and Feedback.** As between Second Sight and you, Second Sight retains sole and exclusive ownership of all right, title and interest in and to the Covered Entity Platform (including any improvements, copies, translations, modifications, adaptions or derivative works of the Covered Entity Platform) and to all copyrights, trade secrets, patents, trademarks, and other intellectual property rights therein and relating thereto. In addition, in the event you acquire any right, title or interest in the Covered Entity Platform, you hereby assign any such right title or interest to Second Sight. If you provide any feedback on the Covered Entity Platform, then we may use that feedback without obligation to you and you hereby assign all right, title and interest in such feedback to Second Sight.

6. **Warranty and Limitation of Liability.**

6.1 **Mutual Representation and Warranty.** Each party represents and warrants to the other party that: (i) it is duly organized, validly existing, and in good standing under its jurisdiction of organization and has the right to enter into this Agreement; (ii) the execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated hereby are within the corporate powers of such party and have been duly authorized by all necessary corporate action on the part of such party, and constitute a valid and binding agreement of such party; and (iii) it has the full power, authority, and right to perform its obligations and grant the rights it grants hereunder.

6.2 **Disclaimer of Warranties.** YOU AGREE THAT THE COVERED ENTITY PLATFORM AND ANY SERVICES PROVIDED UNDER THESE TERMS BY SECOND SIGHT TO YOU SHALL BE

ON AN “AS IS” BASIS. TO THE MAXIMUM EXTENT ALLOWED BY LAW, NEITHER SECOND SIGHT NOR ITS AFFILIATES MAKES ANY REPRESENTATION, WARRANTY, CONDITION, UNDERTAKING, OR TERM, WHETHER WRITTEN OR ORAL, EXPRESS OR IMPLIED, WITH RESPECT TO THE SUBJECT MATTER OF THIS LICENSE, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE OR WARRANTY OF NON-INFRINGEMENT, AND ALL SUCH WARRANTIES ARE EXPRESSLY DISCLAIMED BY SECOND SIGHT. SECOND SIGHT DOES NOT WARRANT THAT THE COVERED ENTITY PLATFORM WILL BE UNINTERRUPTED, ERROR FREE OR WITHOUT DELAY, NOR DOES SECOND SIGHT MAKE ANY WARRANTY AS TO ANY RESULTS THAT MAY BE OBTAINED BY USE OF THE COVERED ENTITY PLATFORM.

6.3 **Limitations of Liability.** YOU UNDERSTAND AND AGREE THAT SECOND SIGHT SHALL NOT BE LIABLE FOR ANY DAMAGES, ECONOMIC OR OTHER LOSS OR DAMAGE, WHETHER INDIRECT, CONSEQUENTIAL, INCIDENTAL, SPECIAL OR PUNITIVE, AND EVEN IF SECOND SIGHT HAS BEEN ADVISED OF THE POSSIBILTY OF SUCH DAMAGES. THE LIMITATIONS OF LIABILITY SHALL NOT APPLY TO SECOND SIGHT'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. SECOND SIGHT'S AGGREGATE LIABILITY FOR DIRECT DAMAGES UNDER THIS AGREEMENT WILL NOT EXCEED ONE HUNDRED DOLLARS ($100).

7. **Indemnification.**

7.1 **Indemnification by Covered Entity, you, your employer or**

**principal.** Covered Entity, you, and if applicable your employer or principal ("Covered Entity Indemnitors") agree to defend, indemnify and hold harmless (including reasonable expenses, costs and attorneys' fees) Second Sight and its directors, officers, managers, employees, agents, representatives, successors and assigns ("Second Sight Indemnitees") from any claims by third-parties, second-parties, government authorities, or actions arising from injury or damage to persons or tangible property resulting directly or indirectly from (i) your access or use or unauthorized access or use of the Covered Entity Platform, (ii) your breach of these Terms, (iii) any third party's access or use of the Covered Entity Platform permitted by you, or (iv) your sharing of Covered Entity Claims Data in breach of any agreements between you and a third party. Covered Entity Indemnitors will assume control of the defense and settlement of any claim subject to indemnification by Covered Entity Indemnitors; provided, however, that Second Sight may, at any time, elect to take control of the defense and settlement of any such claim without modifying or releasing your obligations hereunder. In any event, you will not settle any such claim without Second Sight's prior written consent.

7.2 **Indemnification by Second Sight.** Second Sight agrees to defend, indemnify and hold harmless (including reasonable expenses, costs and attorneys' fees) Covered Entity Indemnitors and their directors, officers, managers, employees, agents, representatives, successors and assigns ("Covered Entity Indemnitees") from any claims by third-parties, second-parties, government authorities, or

actions arising from injury or damage to persons or tangible property resulting directly or indirectly from (i) unauthorized disclosure of Covered Entity Claims Data from the Covered Entity Platform or (ii) a security incident or breach impacting the Covered Entity Platform that results in an obligation to notify governmental authorities of such security incident or breach, provided that Covered Entity Indemnitors have complied and are in compliance with all Terms under this Agreement. Second Sight will assume control of the defense and settlement of any claim subject to indemnification by Second Sight; provided, however, that Covered Entity Indemnitees may, at any time, elect to take control of the defense and settlement of any such claim without modifying or releasing Second Sight's obligations hereunder. In any event, Second Sight will not settle any such claim without Covered Entity Indemnitees' prior written consent.

8. **Delivery of Services.**

 8.1 You shall be solely responsible for any and all equipment, facilities, and/or connections necessary to enable delivery of services through the Covered Entity Platform to you. Second Sight is not responsible for supplying, monitoring, managing, securing, or maintaining any internet or network or for related performance, security, or availability issues.

 8.2 You will take appropriate steps, both before accessing and using the Covered Entity Platform and at all times thereafter, to copy and protect your own data and programs that may be lost, harmed or destroyed and to protect your equipment from any damage. You will be responsible for reconstruction, replacement,

repair or recreation of lost programs, data or equipment in the event of any hardware, software, or services failure as a result of accessing or using the Covered Entity Platform. Second Sight will not, under any circumstances, be responsible for any such losses or damages.

8.3 The Covered Entity Platform is subject to modification (including addition, alteration, or deletion) by Second Sight in its sole discretion.

8.4 The availability of the Covered Entity Platform is not designed to be, nor is it intended to qualify as, a delivery of services on your behalf involving PHI.

9. **Term and Termination.**

9.1 Unless otherwise defined in the Agreement, the term of the Agreement and the Covered Entity Platform License granted hereunder shall commence upon your agreement to these Terms and will continue for recurring 30 day periods, unless the parties enter into a subsequent written agreement that modifies this term (the “Term”), Second Sight terminates your access, or your Covered Entity provides written notice to us pursuant to Section 11.12 of its intent to terminate the Agreement, which shall be effective thirty (30) days following receipt of the notice.

9.2 Unless otherwise set forth in the Agreement, you understand that Second Sight may at any time and from time to time modify or discontinue access to the Covered Entity Platform (or any part), with or without notice, temporarily or permanently without liability to you or to any third party. Termination of the Covered Entity Platform License shall immediately and automatically terminate your right to access and use the Covered Entity Platform.

Upon termination, you will promptly cease using the Covered Entity Platform and Second Sight may immediately terminate your access to the Covered Entity Platform and Second Sight shall have no obligation to return to you any data stored on Second Sight's systems.

9.3 The sections of these Terms that by their nature survive expiration or termination shall survive any expiration or termination of the License. Notwithstanding, and without limiting the generality of, the foregoing sentence, the provisions in Sections 3, 4, 5, 6, 8, and 9 will survive termination of the Agreement and the Covered Entity Platform License.

10. **Forum Selection and Choice of Law:** The laws of Illinois, U.S.A., excluding Illinois's conflict of laws rules, will apply to any disputes arising out of or relating to these Terms. All claims arising out of or relating to these Terms will be litigated exclusively in the federal or state courts of the Northern District of Illinois, and you and Second Sight consent to personal jurisdiction in those courts.

11. **General Provisions.**

11.1 **Severability.** If any provision of these Terms is held by a court of competent jurisdiction to be contrary to law, the remaining provisions of these Terms will remain in full force and effect. Without limiting the generality of the preceding sentence, if any remedy set forth in these Terms is determined to have failed of its essential purpose, then all other provisions of these Terms, including the limitation of liability and exclusion of damages shall remain in full force and effect.

11.2 **Third Party Beneficiaries and No Agency.** Except for Participating Pharmaceutical Manufacturers that are identified upon logging in to the Covered Entity Platform, these Terms are for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer on any other person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of these Terms. You expressly acknowledge and agree that the Participating Pharmaceutical Manufacturers are third party beneficiaries of these Terms and have the full rights to enforce these Terms as if any one of them was a signatory hereto. These Terms do not create or imply any partnership, agency, or joint venture between the parties hereto.

11.3 **Headings.** Section headings used herein are provided for convenience of reference only and shall not constitute a part of these Terms.

11.4 **Confidentiality.** You may be given access to certain non-public proprietary information related to the Covered Entity Platform and Second Sight (the “Confidential Information”). You shall use this Confidential Information only as necessary in exercising the rights granted to you by these Terms. You shall not disclose any Confidential Information to any third party without our prior written consent and you agree that you will protect this Confidential Information from unauthorized use, access, or disclosure in the same manner that you would use to protect your

own confidential and proprietary information of a similar nature and in any event with no less than a reasonable degree of care.

11.5 **Assignment.** You may not assign, transfer or delegate any of the rights or obligations hereunder without the prior written consent of Second Sight. Notwithstanding the foregoing, this Agreement and the Data License granted to Second Sight may be assigned by Second Sight to an affiliate, a successor entity or any entity created or acquired as a result of a corporate reorganization, merger, acquisition or the purchaser of substantially all of the 340B ESP™ business line assets. You specifically authorize our use of subcontractors and our right to delegate any of the rights or obligations hereunder.

11.6 **Amendments.** Second Sight may revise these Terms from time to time by posting such revised Terms on this website, or otherwise notifying you in advance of making effective such revisions to the Terms. Such revised Terms shall be effective to you upon the effective date provided in the posting or other notice, unless otherwise explicitly stated by Second Sight. It is your responsibility to be aware of any such revised terms by checking and reading these Terms from time to time and your notices. By continuing to access or use the Covered Entity Platform after such effective date, you agree to be bound by the revised Terms. If you do not agree with any of these Terms as they may be amended from time to time, you should request to deactivate your User ID and promptly cease using the Covered Entity Platform. If you do not agree with the revised

Terms and cease using the Covered Entity Platform, Second Sight shall not use Covered Entity Claims Data or other data you have previously submitted to the Covered Entity Platform for additional purposes (if any) set forth in the revised Terms. Second Sight retains the right to continue using the Covered Entity Claims Data or other data you have previously submitted to the Covered Entity Platform under the Terms previously in effect.

11.7 **Force Majeure.** We will not be deemed to be in breach of these Terms or liable for any breach of these Terms or our Privacy Policy due to any event or occurrence beyond our reasonable control, including without limitation, acts of God, terrorism, war, invasion, failures of any public networks, electrical shortages, earthquakes or floods, civil disorder, strikes, fire, pandemics or epidemics (whether or not already active at the time you accept these Terms), act of government (including but not limited to “shelter in place,” “travel ban,” “quarantine” or “shutdown” orders, whether or not already active at the time you accept these Terms) or other disaster.

11.8 **No Waiver.** The failure of Second Sight to insist upon strict enforcement of any provision of these Terms shall not be construed as a waiver of any provision or right.

11.9 **Entire Agreement.** These Terms, including any documents incorporated into these Terms by reference, constitute the entire agreement between you and Second Sight regarding the subject matter of these Terms and supersede all prior agreements and understandings,

whether written or oral, or whether established by custom, practice, policy or precedent, with respect to the subject matter of the Terms.

11.10 **United States Only.** The Covered Entity Platform is intended for use by individuals located in the United States and is not intended for use by anyone located outside of the United States. You should not use the Covered Entity Platform if you are not located in the United States. Second Sight makes no claims that the Covered Entity Platform is accessible or appropriate outside of the United States.

11.11 **Age Restrictions.** The Covered Entity Platform is not directed to individuals under the age of 18. You must be at least 18 years of age to access and/or use the Covered Entity Platform. By using the Covered Entity Platform, you acknowledge and agree that you are at least 18 years of age.

11.12 **Notices.** Please contact us at:

telephone: 1.888.398.5520 (toll free)
e-mail: support@340besp.com

Attn: Legal Department
Second Sight Solutions, LLC
70 W. Madison, Suite 5000 |
Chicago, IL 60602

All notices to you in connection with these Terms may be delivered via email at the email address provided by you, and you agree that these email communications satisfy any legal requirements.

© 2024 Second Sight Solutions. All

rights reserved.

Pages

Home

About Us

Company

FAQ

Terms of Use

Privacy Policy

FAQs

HIPAA & Privacy

Duplicate Medicaid Rebate Resolution

Details

Emeryville, CA

2200 Powell Street, Suite 1200, Emeryville, CA 94608

1.888.398.5520

support@340besp.com

Contact Us

© 2020 Second Sight Solutions

2200 Powell Street, Suite 1200, Emeryville, CA 94608