# EXHIBIT 7

Eli Lilly and Company

Lilly Corporate Center
Indianapolis, Indiana 46285
U.S.A.
+1.317.276.2000
www.lilly.com

June 17, 2026

Keith B Thomasset
Chief Pharmacy Officer
Daniel Fontaine
System Director 340B Program
Mary Hitchcock Memorial Hospital
One Medical Center Drive
Lebanon, NH 03756

**RE: *Final Notice: 340B Ceiling Price Inaccessibility Imminent***

Dear Mary Hitchcock Memorial Hospital:

Despite our repeated outreach, we have not yet received the in-house claims data from your organization that is required as a condition of Lilly's 340B ceiling price offer. As outlined in our previous communications, complete and accurate claims-data submission is a condition of Lilly's offer to sell its products at 340B ceiling prices. To accept Lilly's offer and maintain access to 340B pricing, you must submit your outstanding data within 5 business days of the date of this letter. If you fail to submit the necessary data within that time, Lilly will assume that you have chosen to reject Lilly's 340B offer and, given that choice, will notify wholesalers that 340B pricing for Lilly products is no longer accessible to your entity until the outstanding claims data is submitted.

For over four months, Lilly has tried in good faith to communicate with you about the required claims data, initially with our January 15 announcement. When you failed to upload claims data as required, we sent follow-up letters dated March 20 and April 15 reminding you of this obligation. We then emailed you and the individuals copied on this letter offering to set up a meeting with Lilly employees to learn why you had not submitted the required claims data and to discuss any implementation concerns. We hoped that such a conversation might lead to a constructive dialogue about reasonable and workable solutions. Despite our outreach, you have not yet submitted the required claims data. In our correspondence, you raised concerns about compliance with the Health Insurance Portability and Accountability Act ("HIPAA") and about the scope and security of the data collected through the 340B ESP™ platform, and you asked Lilly to identify the specific data fields it requires. We are confident that the submission of claims data complies with HIPAA, and we provide the following details in response to the questions and concerns you raised.

Data submitted to Second Sight Solutions is not PHI. The Rx Number and Product Serialization Number (and, for medical claims, the corresponding claim identifiers) are hashed using SHA-3 with a salt before any data leaves the covered entity's environment. Second Sight Solutions has issued an Expert Determination that the resulting data set meets the de-identification standard at 45 C.F.R. § 164.514(b)(1). That determination covers the full set of fields collected for both pharmacy and medical claims submissions. Under 45 C.F.R. § 164.502(d)(2), the HIPAA Privacy Rule does not restrict uses or disclosures of de-identified data. To be clear, Second Sight Solutions never receives identifiable data. Hashing occurs client-side at the covered entity prior to upload. Second Sight does not hold, and cannot derive, the original identifiers.

The de-identified data cannot be reversed, even by Lilly. SHA-3 hash is a one-way cryptographic hash function. Unlike tokenization, there is no key or lookup table that could be used to derive the original value from the hash. The hashing process is one-way. Hashed values cannot be reversed to derive the original input. Matching is performed through the platform architecture and binary application described in the expert determination. The 340B ESP™ platform ensures that the data is transferred (a) from a 340B covered entity to the 340B ESP platform in a de-identified manner, (b) from manufacturer to 340B ESP application in a de-identified manner, and (c) from the 340B ESP application back to the manufacturer in a linked and de-identified manner, which consists of the Random Linking ID, corresponding to instances of linked claim and rebate data, as well as the 340B ID, which indicates where the transaction occurred.[1]

This is done via a binary application, which links rebate claims to corresponding 340B claims data submitted via 340B ESP™. The binary application is designed and configured with authentication and access controls that prohibit Lilly from accessing transferred 340B claims. Specifically, Lilly provides a CSV rebate claims file to the binary application, which then makes an API call to the binary server operated by Second Sight to retrieve the relevant 340B claims data. The binary application then de-identifies the rebate claims file and links the de-identified rebate data to the de-identified 340B claims data. The output file made available to Lilly consists only of the linking ID and 340B ID, showing where a claim appeared in both the 340B discount column and the backend rebate column. Accordingly, Second Sight Solutions' Expert Determination concludes that the re-identification risk meets the "very small" standard under 45 C.F.R. § 164.514(b)(1).

The matching process also does not re-identify covered entity data. Lilly applies the same de-identification process to its own payer claims data, which it already holds in identifiable form and receives lawfully from payers under the HIPAA payment exception. Because identical claim records produce identical hashed values, records that appear in both data sets can be matched at the hash level without exposing any underlying identifiers. The output reflects only the records that exist in Lilly's payer data and also appear in the covered entity's submission, in the form Lilly already held them. Where a covered entity record has no counterpart in Lilly's payer data, the hash remains unmatched

[1] See id; *see also* 45 C.F.R. 164.514(b)(ii).

and Lilly learns nothing about the underlying record. The matching process produces no identifiable information beyond what Lilly already has through its lawful payer relationships.

As described in this letter, Lilly is not asking for PHI. All data uploaded by covered entities through 340B ESP™ is de-identified data and remains de-identified throughout the matching process. Disclosure of de-identified data is not governed by HIPAA, and covered entities would not be prohibited by law from sharing such data. However, covered entities' disclosure of protected health information ("PHI") to Lilly would be a permissible payment disclosure under HIPAA, if in fact PHI was disclosed, which it is not.

Disclosure of PHI to Lilly is a permissible payment purpose. HIPAA permits covered entities to use or disclose PHI for treatment, payment and health care operations, without individual authorization.[2] Further, payment disclosures do not require a covered entity to enter into a business associate agreement with the entity receiving PHI for such payment purposes. Payment activities are broadly defined under HIPAA.[3]

In addressing the breadth of payment activities under HIPAA, the Department of Health and Human Services, Office for Civil Rights ("OCR"), has provided FAQ guidance directly permitting the disclosure of PHI to pharmaceutical manufacturers. OCR has confirmed that "[t]he Privacy Rule permits a health plan to disclose protected health information, such as prescription numbers, to a pharmaceutical manufacturer for purposes of adjudicating claims submitted under a drug rebate contract," because "such disclosures are permitted as part of a covered entity's payment activities," and that "[a] business associate agreement is not required to make these disclosures."[4] OCR has reached the same conclusion for analogous disclosures by state Medicaid agencies, explaining that "[t]he Privacy Rule permits State Medicaid agencies to disclose protected health information, such as prescription numbers, to pharmaceutical manufacturers and third-party data vendors that assist the pharmaceutical manufacturers, for purposes of validating claims submitted under the Medicaid Drug Rebate program," again because "such disclosures are permitted as part of a State Medicaid agency's payment activities."[5]

These FAQs confirm that a covered entity's disclosure of PHI to a pharmaceutical manufacturer is a permissible payment activity under HIPAA. A hospital pharmacy's disclosure of PHI to a manufacturer as a condition of 340B ceiling-price discounts is precisely the same type of

---

[2] See 45 C.F.R. 164.502(a)(1)(ii) and 45 C.F.R. 164.506(c)(1).

[3] 45 C.F.R. 164.501.

[4] U.S. Department of Health and Human Services, Office for Civil Rights, HIPAA Privacy Rule FAQs for Professionals, FAQ 455, available at: https://web.archive.org/web/20250327192521/https://www.hhs.gov/hipaa/for-professionals/faq/455/does-hipaa-permit-health-plans-to-disclose-information-to-pharmaceutical-manufacturers/index.html (Date Created: 06/05/2003; Last Accessed 06/05/2026)

[5] U.S. Department of Health and Human Services, Office for Civil Rights, HIPAA Privacy Rule FAQs for Professionals, FAQ 456, available at: https://www.hhs.gov/hipaa/for-professionals/faq/456/does-hipaa-permit-state-medicaid-agencies-to-disclose information-to-pharmaceutical-manufacturers/index.html (Date Created: 06/05/2003; Last Accessed 06/05/2026)

payment activity addressed in the FAQs, and it is equally permitted. And OCR's Privacy Rule guidance leaves no doubt: it reads "payment activities" broadly, to encompass the full range of providers' efforts to obtain payment or reimbursement for their services.[6] Lilly requires 340B covered entities to submit their claims data through 340B ESP™ as a condition of its offer and a prerequisite to the discounted 340B ceiling price. Because covered entities are only entitled to the 340B discount when they agree to submit claims data through 340B ESP™, disclosure of claims data for purposes of obtaining the discount would constitute a permissible payment disclosure.

Lilly has also ensured that payment disclosures meet HIPAA's minimum necessary standards. Recognizing the importance of ensuring confidentiality and security of sensitive patient data, Lilly has taken an additional step, and through engagement with Second Sight and use of the 340B ESP™ platform, ensured that only de-identified data is shared with Lilly. Accordingly, Lilly is not receiving any PHI from Second Sight for purposes of this program, even though covered entities would be permitted to disclose PHI to Lilly for these purposes.

Finally, we address the questions you raised about the scope of the data and the specific fields Lilly requires. As stated in our January 15 notice, Lilly requires claims data for all 340B-priced product utilization, inclusive of both pharmacy and medical benefit dispenses. The required fields are those that the 340B ESP™ technical specifications designate as required for all submissions; Lilly does not require the optional fields that those specifications flag as manufacturer-specific. Second Sight Solutions can provide the precise field list and registration assistance at the number below.

As set out above, there are no conceivable HIPAA or patient-privacy concerns with Lilly's claims-data requirement. Thousands of other covered entities have reached the same conclusion, and have been providing the same de-identified claims data to Lilly—through the same vendor. Lilly values its relationship with you and hopes to continue to work with you. If you, like thousands of other covered entities, wish to accept Lilly's offer for 340B pricing by providing claims data, your organization must:

1. Complete registration at www.340BESP.com if not already done;
2. Submit all outstanding claims data beginning February 1, 2026 in full through the 340B ESP™ platform; and
3. Immediately notify Lilly at 340B@lilly.com once your submission is complete so we can confirm receipt and you may access 340B ceiling pricing as soon as practicable.

For urgent registration and upload assistance, please contact Second Sight Solutions at 888-398-5520. If you believe your organization qualifies for an exemption or have extenuating circumstances you would like to bring to our attention, please contact us immediately at 340B@lilly.com.

[6] *See* "Uses and Disclosures for Treatment, Payment and Health Care Operations", available at: https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/disclosures-treatment-payment-health-care-operations/index.html (December 3, 2002; Revised April 3, 2003).

Sincerely,

Derek Asay
Senior Vice President
Government Strategy and Federal Accounts
Eli Lilly and Company

cc: daniel.e.fontaine@hitchcock.org
jamie.l.sherman@hitchcock.org
justin.r.mirick@hitchcock.org
kayla.ciampi@hitchcock.org
merrill.d.roy@hitchcock.org
suzy.d.chan@hitchcock.org