**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| MARY HITCHCOCK MEMORIAL HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY,<br><br>Defendant. | Case No. 1:26-cv-00616 |

**DEFENDANT'S SURREPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION[1]

Mary Hitchcock Memorial Hospital (MHMH) attempts to meet the demanding threshold for a preliminary injunction through new arguments in its Reply. But these new arguments are most notable for what they do *not* say. MHMH never contests that its publicly-reported finances and net income dwarf any possible cost (by MHMH's own estimates) from Lilly's offer conditions. MHMH never contests that it is *able* to comply with Lilly's offer conditions. While it now tries a (wholly-forfeited) reputational harm claim, MHMH never disputes Lilly's evidence that it *already* provided claims data to Lilly's *same* third-party provider for a year and a half, and offers no evidence of harm from that. MHMH's speculation about privacy concerns is *undermined*, not supported, by its evidence. In short, MHMH fails to convert this purely financial, federal-pricing dispute—committed entirely to HHS—into an exigent circumstance requiring emergency relief.

MHMH's revised effort to avoid preemption via its Vermont cause of action doubly fails. The Supreme Court has foreclosed "suits to enforce § 340B" or assert overcharges over the federal 340B price. *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 113-14 (2011); Opp'n 20-31. Regardless, MHMH concedes that this claim only relates to "contract pharmacies" doing "business in Vermont." Reply 15. But MHMH does not challenge Lilly's offer condition limiting dispenses to its in-house pharmacy. The Vermont-law claim thus cannot address *any* injury, irreparable or otherwise, and new statements of fact without evidence cannot rehabilitate other claims.

## I. MHMH FAILS TO MAKE A CLEAR SHOWING OF IRREPARABLE HARM.

A "temporary loss" of money that can "be recovered" in the event of a favorable judgment is not irreparable harm, *Sampson v. Murray*, 415 U.S. 61, 90 (1974), much less the "clear showing"

[1] Should Lilly's pending motion for more time for a longer, consolidated surreply and amicus opposition be granted, Lilly will file a superseding brief. It files this timely brief without prejudice to that motion.

required. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024). Lilly explained that MHMH provides no support for its speculation that paying full price for Lilly's drugs rather than the federal 340B price (which MHMH estimates at $4.7 million annually), or hiring a single compliance employee, would disturb MHMH's business. Thomasset Decl. ¶¶ 37, 66. Rather, the cost of even paying full price would represent (for MHMH's most recent full-year reporting) 3% of its $152 million in net income and about 0.18% of its $2.6 billion in revenue. Opp'n 18 & n.15.

MHMH *never* contests these figures, leaving the evidence undisputed. *See* Reply 3. That alone dooms its irreparable harm claim since MHMH could *either* pay ordinary market price for Lilly's medicines as this suit continues *or* absorb the (minimal) alleged costs to comply, as most entities have (and as MHMH did as recently as November 2023 for contract pharmacy dispenses), and as required to mitigate damages. Asay Decl. ¶¶ 19, 41, 52-54. None of that requires "curtailed" or "reduced" services as asserted without factual support in the Reply (assertions well beyond MHMH's carefully caveated declaration). *Compare id. with* Thomasset Decl. ¶¶ 68, 71. Though MHMH repeats its concern for unspecified bond covenants, Reply 4, it still fails to provide any evidence about its cash position that could suggest a risk of shortfall, or identify what "bond covenants" it vaguely states "could" be tripped—particularly with its public finances uncontested. Opp'n 17-18. MHMH *only* adds an unsworn press release stating the Dartmouth Health *system* is making cuts to address expenses, and restates a claim that the system is running a deficit (smaller than MHMH's recent net income). Reply 1 n.2, 4.[2] But MHMH does not explain how this alleged system deficit affects its *own* finances, attested to in its separate, undisputed financial filings.

---

[2] The press release emphasizes that these cost-cutting measures address various raised costs, including labor costs, and are not expected to "negatively impact patients." *See* Dartmouth Health Announces Staff Reductions, Dartmouth Health, https://tinyurl.com/y7eey9ne (Sept. 15, 2026) (describing, e.g., using "outside vendors" for "Lean Six Sigma" training, and consolidating alliance efforts).

In any event, MHMH can avoid *any* price difference by simply complying with Lilly's reasonable conditions (which its Complaint, before mid-briefing amendment, conceded to be "similar" to "twelve other . . . manufacturers," making Lilly-specific costs even *more* unlikely, Compl. ¶ 93). MHMH never argues it *cannot* comply, only that it should not *have to*. But MHMH has made no clear showing why compliance is not just contrary to its *preference*, but *irreparable*. So, it now pivots to alleging irreparable harm from risks to "patient trust and . . . reputation" or a risk of disclosure of confidential patient information. Reply 4. This irreparable-harm argument is nowhere in the opening motion, Prelim. Inj. Mem. 34-36, and plainly forfeited. *See Indus. Commc'ns & Elecs., Inc. v. Town of Alton*, 2010 WL 3895913, at *2 (D.N.H. Oct. 4, 2010). But unlike in cases where confidential information had *already* been misused, *PC Connection, Inc. v. Sillich*, 673 F. Supp. 3d 131, 138 (D.N.H. 2023), MHMH's *evidence* only shows that Second Sight's Terms *disclaim* any sharing of personally-identifying data—consistent with Lilly's sworn evidence. Prelim. Inj. Ex. 3 at 3-5; Asay Decl. ¶¶ 21-22. MHMH cannot carry its clear-showing burden with speculation about the "risk of de-identification failure" with no evidence of such. Reply 4. Further, any claim to reputational harm is defeated by the *unrebutted* fact that MHMH *already shared claims data for over 17,000 claims* with Lilly, also through Second Sight, through its contract pharmacies. Asay Decl. ¶¶ 53-54. MHMH never states that this past practice caused harm to patients or its reputation. Nor does it engage on this issue with the federal government's requirement of the same claims data (and more) for its rebate model. Taddei-Allen Decl. ¶¶ 16, 39-41. Again, *even if* the Court believed (without any evidence) that complying with data sharing requirements that MHMH *previously* complied with just *three years ago* established a "clear showing" of irreparable harm, MHMH can simply opt out by paying Lilly non-discounted prices (a small fraction of its uncontested net income) and seeking eventual recovery in this litigation.

## II. MHMH FAILS TO SHOW ITS CLAIMS ARE LIKELY TO SUCCEED.

As Lilly explained, MHMH's lawsuit is contrary to *Astra*'s prohibition on "suits to enforce § 340B," wholly preempted, and contravenes the intergovernmental immunity doctrine. Opp'n 20-31; *Astra*, 563 U.S. at 113-14. Those faults remain fatal to MHMH's claims. For purposes of this surreply, Lilly focuses on MHMH's attempt to rehabilitate the merits of its state-law claims, which face tremendous hurdles, even if they were not preempted, and cannot be pre-judged to support extraordinary preliminary relief.

***Count I.*** MHMH emphasizes Vermont's claims-data restriction to fight preemption, appealing to cases addressing *affirmative* facial challenges to state-law requirements. Reply 8, 10. But MHMH's suit is not about delivery conditions (much less affirmative challenges to them); rather, the suit challenges the denial of federal pricing under the 340B statute, and *Astra* leaves no room for such "suits to enforce § 340B." *Astra*, 563 U.S. at 113-14. And the claim cannot support an injunction regardless. MHMH concedes it may *only* seek relief for "340B dispenses at Vermont-licensed contract pharmacies," not its in-house New Hampshire pharmacy. Reply 15. But there are no such dispenses. MHMH expressly disavows any challenge to Lilly's years-old conditions foreclosing its use of contract pharmacies, Reply 14, and does not dispute that, per those conditions, it "ha[s] not used a contract pharmacy for Lilly drugs … for over two years," including in "Vermont." Asay Decl. ¶ 57. So there is no injury (irreparable or not) that the Vermont claim addresses, and any request relating to contract pharmacy conditions would be untimely.

***Count II.*** MHMH also cannot rehabilitate its Consumer Protection Act claim. It invokes "monopoly," but has no authority suggesting a valid patent holder cannot put reasonable conditions on its sales, let alone that this condition harms *competition*. Reply 16. It argues Lilly's condition is about "commercial data harvesting," not "program integrity," but that is hotly contested, and it

presents nothing to rebut Lilly's explanation of how the data is received and used. *Compare id.* 16-17 *with* Asay Decl. ¶ 39. Further, claiming an unfair act under the CPA requires a "substantial injury." *State v. Priceline.com, Inc.*, 206 A.3d 333, 343 (N.H. 2019). MHMH cannot meet that bar, having submitted data for over 17,000 claims from its contract pharmacies without complaint. Asay Decl. ¶ 54. While MHMH flyspecks Lilly's evidence showing compliance costs are negligible, Reply 19-20, MHMH never quantifies those costs (with evidence or otherwise), only listing efforts consistent with its prior estimate: the cost of one employee. Thomasset Decl. ¶ 37.[3]

***Counts III and IV.*** MHMH still fails to offer any evidence supporting its contract claims. MHMH protests that "years of invoices and deliveries" confirm the terms of some oral contract, Reply 21, but has not put forward these purported documents to show a purported agreement likely had its preferred terms or applied to future sales. The "proponent of contract has [the] burden of proving" the contract's existence and necessary terms, *Ouellette v. Chuck Smith's Auto, LLC*, 2017 WL 4770565, at *3 (N.H. Sept. 29, 2017) (citation omitted). MHMH cannot carry that burden with makeweight assertions, particularly as it concedes that all purchases run through wholesalers. Prelim. Inj. Mem. 15-16. Its same assertions also do not show that any, let alone all, discounted purchases were made directly with Lilly or fell "under the $500 statute of frauds threshold." Reply 21-22 n.10. MHMH's only sworn statement refers to a price over $6,000. Thomasset Decl. ¶ 67.[4]

MHMH has not shown any of its claims are likely to succeed on their own terms. The Court should deny its motion for a preliminary injunction.

---

[3] And MHMH offers no reason to read the Consumer Protection Act to adopt what MHMH admits is the *minority* approach to claims data across the states, *rejected* by the New Hampshire legislature. Reply 18. "New Hampshire's public policy is likely best expressed by its legislative enactments." *Miller v. Sunapee Difference, LLC*, 308 F. Supp. 3d 581, 593 (D.N.H. 2018).

[4] The unjust enrichment claim concededly arises from "[t]he same conduct supporting MHMH's CPA and contract claims," and likewise fails. Reply 22.

Dated: October 6, 2026

Respectfully submitted,

*/s/ James M. Campbell*

James M. Campbell, NH Bar #29054817
Jacob J. Lantry (*pro hac vice*)
CAMPBELL CONROY & O'NEIL, P.C.
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3300
jmcampbell@campbell-trial-lawyers.com
jlantry@campbell-trial-lawyers.com

John C. O'Quinn, P.C.
(*pro hac vice*; DC Bar #485936)
Megan McGlynn Butler
(*pro hac vice*; DC Bar #242410)
Chris Pagliarella
(*pro hac vice*; DC Bar #2773493)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
john.oquinn@kirkland.com
megan.butler@kirkland.com
chris.pagliarella@kirkland.com

J. Matthew Rice
(*pro hac vice*; TN Bar #040032)
KIRKLAND & ELLIS LLP
Symphony Place
150 3rd Avenue South, Suite 1220
Nashville, TN 37201
Telephone: +1 629 222 0100
Facsimile: +1 629 222 0101
matthew.rice@kirkland.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant's Surreply in Opposition to Plaintiff's Motion for Preliminary Injunction was filed electronically on this 6th day of October, 2026, and will, therefore, be served electronically upon counsel for Plaintiff.

*/s/ James M. Campbell*
James M. Campbell, NH Bar #29054817